IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. |
| | ) | 11-00290-CB-B |
| KATHEA GENEVA ADAMS, | ) | 13-00600-CB |
| | ) | |
| Petitioner/Defendant | ) | |

## ORDER

This matter is before the Court on a motion to vacate, set aside, or correct sentence filed by petitioner Kathea Geneva Adams, a person in federal custody. (Doc. 40.) The government has filed a response in opposition to the motion (Doc.43), and Petitioner has filed a reply brief (Doc. 48). For the reasons set forth below, the Court finds that the motion is due to be denied without an evidentiary hearing.[1]

**Background**

Petitioner Kathea Geneva Adams was charged in a single-count indictment with possessing a firearm after having been previously convicted of a crime punishable by more than one year ("felon-in-possession") in violation of 18 U.S.C. § 922(g). At arraignment, CJA Panel Attorney Larry Moorer was appointed to

---

[1] Petitioner has also filed various miscellaneous motions. The motion for extension of time to file a response (Doc. 46) is **moot.** Petitioner subsequently filed a response brief, which the Court has considered. The motion seeking credit for time served in pretrial confinement (Doc. 49) is **DENIED**. *See United States v. Pardue*, 363 F.3d 695, 699 (8th Cir. 2004) (Bureau of Prisons determines whether defendant is given credit for time spent in custody prior to commencement of sentence). The motion to unseal the presentence report (Doc. 50) is **DENIED**. *See United States Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988) (recognizing need for restriction of third party access to Presentence Investigation Reports).

represent Adams. Moorer attempted to negotiate a plea agreement with the government, but the parties were unable to come to terms because Adams did not want to waive her right to appeal. Therefore, Adams submitted a factual resume and entered a "blind plea."

During the plea colloquy, Moorer explained that the parties could not reach an agreement due to "an unusual set of facts." (Guilty Plea Tr. 9, Gov.'s Ex. 1, Doc. 43-1.) Under the United States Sentencing Guidelines, the base offense level applicable to the felon-in-possession charge was 14. However, the government's position was that the underlying offense—attempted murder—should be the starting point for the base offense level, which result in a much higher offense level. Because she intended to dispute the government's evidence of attempted murder at sentencing, Adams declined to enter a plea agreement that would have required her to waive her right to appeal. Thus, the Court explained to Adams that by entering a "blind plea" she was admitting guilt without any sentencing recommendation from the government. (*Id.* 8.)

When Adams told the Court she did not understand the plea agreement discussion, the Court explained the parties' differing positions on the facts underlying the offense and how those facts could affect her sentencing guideline range. (*Id.* 9-12.) Adams indicated that she understood but qualified that by saying "a little bit." (*Id.* 12..) This exchange followed immediately thereafter:

> The Court: Okay. Well, now, look. If at any time during this whole proceeding this morning you decide it's just too much confusion and you don't want to go on, you don't have to plead guilty. Do you understand that? That's your decision. I'm not forcing you to plead guilty just because you're here today. Are you clear about that?

> Defendant Adams: Yes, sir.
>
> The Court: Okay. So you decide later, at the end of this proceeding. I'm going to give you a chance to say: "Wait a minute, Judge. I don't want to plead guilty." I'm going to give you that chance.
>
> Defendant Adams: Yes, sir.

(*Id.*) Adams acknowledged during the plea colloquy that she had not been threatened or coerced, nor had she been promised anything in exchange for her guilty plea. (*Id.* 13.) The Court informed Adams that she faced a maximum sentence of 10 years in custody, a $250,000 fine, a 3-years supervised release term, and a $100 special assessment. (*Id.* 14-15.) Adams indicated that she understood. (*Id.*) The Court further informed Adams of the rights she would be waiving if she pled guilty—e.g., the right to a jury trial at which the government would bear the burden of proof, the right to call witnesses and present evidence, the right to testify. (*Id.* 21-24.) Adams indicated that she understood both the rights she would be waiving and the consequences of pleading guilty. (*Id.* 24.) Adams admitted that the factual resume she signed was true and correct, the Court found it to be sufficient basis for a guilty plea, and Adams entered a plea of guilty. (*Id.* 25.)

In the factual resume, signed under oath, Adams admitted the following conduct giving rise to the offense:

> Kathea Geneva Adams was previously convicted of Kidnaping, Second Degree, on November 30, 2009, in the Circuit Court of Mobile County, Alabama, Case No. CC09-3242.
> On October 3, 2011, Clarke County Sheriff's Criminal Investigation Unit was called to the intersection of Sand Flat Road and highway 43 and began investigation of Adams' possession and discharge of a firearm in the vicinity of Rachel Lents. Lents, and another female were passengers of Adams during a drive the same day, from Mobile to Clarke County. Lents was familiar with Adams

and the other female, in that they all lived in or frequented the Crest Motel on Government Blvd. In Mobile.

Based upon the information Lents provided members of the Clarke County Sheriff's Department following the incident, the Mobile Police Department was contacted and a BOLO was put out for the vehicle was towed to Grove Hill. Adams identified herself has Shay Henderson during booking.

The following day a search warrant of the vehicle was executed at the wrecker yard. The cup holder in the center console pulled out and [a Charter Arms, Model Undercover, 5-shot revolver] was recovered from the area under the cup holder. . . . Later Adams was read her *Miranda* rights, and after waiving them she initially stated that she told Lents they were going to party with some guys who had a lot of money, but when the drove to Clarke County, they just put Lents out and told her not to come back to Mobile. When asked if she shot at Lents, Adams said she did not, and she did not have a gun. An Investigator showed Adams what he found inside her vehicle and she said she did have the firearm and that she bought it off the street. Adams said she did not shoot at Lents, and then later said that she shot a few rounds in the air to scare Lents. Adams said she was mad at Lents because she had sex with her husband.

In summary, on or about October 3, 2011, Adams, who had previously [been] convicted of the aforementioned felony offense was in knowing possession of the above-described firearm which was manufactured outside the State of Alabama and therefore affected interstate commerce by its presence in the state.

(Factual Resume 2-3, Doc. 16).

The Presentence Investigation Report (PSR) prepared by the United States Probation Office recommended a base offense level of 33 "because the defendant used the firearm in connection with the commission or attempted commission of another offense (attempted murder)."[2] (PSR ¶ 19, Doc. 19.) After applying a total three-level reduction for timely acceptance of responsibility, the PSR calculated a

---

[2] In determining the base offense guideline for a felon-in-possession offense involving the use of the firearm in connection with the commission or attempted commission of another offense, the Sentencing Guidelines require reference to both the felon-in-possession base offense level and the base offense level applicable to the underlying offense. U.S.S.G. § 2K2.1(c)(1). The court must apply whichever base offense level is greater. *Id.*

total offense level of 30. The guideline range for level 30 with Adams' criminal history category (III) was 121 to 151 months imprisonment. However, because the statutory maximum was 120 months, the guideline was 120 months.[3] Adams' counsel filed an objection to the PSR, stating: "Defendant asserts that the firearm was not used in connection with the commission or attempted commission of another offense. Pursuant to U.S.S.G. § 2K2.1(a)(6), the offense level is 14." (Deft.'s Rsp. ¶ 1, Doc. 22.)

The sentencing hearing took place on April 23, 2012. To support its position that the firearm was used during an attempted murder, the government relied on the testimony from Chief Investigator Ron Baggett of the Clarke County Sheriff's Department along with a video of Baggett's interview with the victim, Rachel Lents.[4] Investigator Baggett testified that me responded to a call to a home in rural Clarke County where he found Ms. Lents "[who] appeared to have injuries, physical injuries. . . [and] was very emotionally upset." (Sent. Tr. 6, Doc. 32.) Baggett took a statement from Lents "within 30 minutes or so" of after the incident. Over defense counsel's hearsay objection, the Court allowed Baggett to testify as to Lents' out-of-court statement. In summary, Lents' told Baggett that she had left Mobile with Adams and another woman, Kimberly Pickron, who told Lents that "they were going to meet some guys and party and make some money." (*Id.* 8.) They stopped at the intersection of Highway 43 and Sand Flat Road in Clarke County, and Adams told Lents "that she really brought her up there to put a bullet in her head. And she

---

[3] Pursuant to U.S.S.G. § 5G1.1(a)(1) if the statutory maximum sentence is less than the minimum of the applicable guideline range, the statutory maximum becomes the guideline range.

[4] At the time of the sentencing hearing, Lents' whereabouts was unknown.

pulled out a small black revolver." (*Id.* 8-9.) Lents got out of the car and ran. As she did, Adams fired four shots at her. Baggett questioned Lents as to whether Adams fired at her or in the air. Lents said "when she fell down she . . . heard the bullets hitting the ground next to her." (*Id.* 17.)

During Baggett's testimony, the government also played a video recording of Lents' statement. (*Id.* 9.) Because the video itself was an exhibit, its contents were not transcribed as part of the record. Instead, the transcript contains statement from the prosecutor that "at this point we would like to play a portion of [Lents' videotaped statement" followed by the notation: "VIDEO PLAYING." (*Id.* 10.) The following exchange followed immediately thereafter:

> BY [AUSA] O'BRIEN:
> Q. Investigator Baggett, I believe we may have been talking over it while it was going on. But did Ms. Lent[s] make a statement on that recording as to what the Defendant said to her was the purpose of bringing her to that location."
> A. Yeah, she did state that she told her to put a bullet in her head, yes.

(*id.* 9-10.)

Adams did not testify at the sentencing hearing. Her attorney did not call any witnesses or present any evidence. The only other witness to the incident, Kimberly Pickron, also a passenger in Adams' vehicle, was not subpoenaed to testify. Pickron was arrested along with Adams and was incarcerated at the Clarke County jail. Approximately one month after the incident, Pickron gave a statement to law enforcement corroborating Lents' version of events. At some point during her
6

incarceration, a letter written by Pickron was intercepted by jail officials.[5]  In that letter, which was apparently written to a friend, Pickron gave a version of events that supported Adams' statement.  Adams' attorney had copies of both Pickron's letter and her statement prior to the sentencing hearing.

At the close of the evidence, Adams' attorney argued that the Court should not credit the government's evidence regarding attempted murder because Lents, the victim, was not available for cross-examination.  In rejecting that argument, the Court made the following inquiry of Adams' attorney:

> Well, let me ask you this:  How extreme is it [to apply the attempted murder cross reference] *when we have the video of the woman and the testimony of the officer saying that she was shot at by the Defendant*.  We have the Defendant admitting she shot in the presence of . . . the victim.  And the only difference is the victim says she was shot at based on what the officer said the Defendant said, I'm going to kill you or take you out or put a bullet in you head and the Defendant's own admission that she fired in the air.  There's just a thin line of difference between what the Defendant has admitted and what the victim has said actually happened.

(*Id.* 28 (emphasis added).)

Ultimately, the Court found "by clear and convincing evidence that Ms. Adams did commit the attempted murder on Ms. Lent[s].  And that the evidence is sufficient to support that finding by the Court. "  The Court, therefore, "den[ied] [the defendant's] object as to the cross reference" and found that the offense level [wa]s properly calculated in the presentence report as a 30." *Id.* 35-36.  The Court

---

[5] The letter (Petr.'s Ex. B) is undated.  Petitioner asserts that it was written on October 11, 2011, less than two weeks after the incident.  (Petr.'s Br. 13.)

sentenced Adams to the statutory maximum sentence, which was also the applicable guideline sentence—120 months imprisonment. [6]

Adams appealed her sentence, and argued on appeal "that the district court erred by applying the cross-reference of U.S.S.G. § 2K2.1(c)(1)(A) to calculate her base level offence because there was insufficient evidence that Adams possessed the gun in connection with the commission of an attempted murder." *United States v. Kathea Geneva Adams,* No. 12-12329 (11th Cir. May 8, 2013) (per curiam) (Doc. 37). The appellate court affirmed the sentence, "reject[ing] Adams's claim that the district court impermissibly relied on hearsay." (*Id.* 9.) The court recognized that "[a]t sentencing hearings, district courts may 'consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probably accuracy." *Id.* (quoting U.S.S.G. § 6A1.3(a). The court found that the hearsay evidence of Lents' statement was sufficiently reliable for several reasons. First, Lents' statement and Adams' version of events were nearly identical. Second, Adams' corroboration of Lents' statement "obliterate[d] the 'thin line of difference' between both accounts." *Id.* at 10. Third, Adams had sufficient opportunity to attack Lents' credibility through cross-examination of Baggett (which she did), by referencing the government's evidence that Lents was an admitted prostitute and drug addict, and finally, by presenting her own version of events (which Adams did not do). *Id.* at 11. The Eleventh Circuit's opinion was issued as mandate on June 10, 2013. (Doc. 38.) Adams filed the instant § 2255 motion on December 2, 2013.

---

[6] In addition, the Court imposed a 3-year term of supervised release and a $50 special assessment.

8

**Issues Raised**

The petition asserts two broad grounds for relief: ineffective assistance of counsel and abuse of discretion. Adams asserts numerous instances of ineffective assistance of counsel, including: (a) failure to conduct an adequate investigation; (b) "whether the plea was knowing and voluntary"; (c) failure to subpoena witnesses; (d) failure to inform Adams of her right to testify; (e) failure to properly prepare and present exhibits; (f) failure to object to the video recording; (g) failure to object to Baggett's testimony that Adams was the only person to state that she fired in the air. (Mot. 5, Doc. 40.) The "abuse of discretion" claim is directed at the Court's acceptance of evidence allegedly not on the video recording and the Court's reliance on a portion of Baggett's testimony for which there was allegedly contrary evidence.

**Standard of Review**

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Fr*ady, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *Addonizio v. United States*, 442 U.S. 178, 185 (1979). In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. One way a petitioner may do so is by demonstrating that the default was due to constitutionally ineffective performance by counsel. *Cross*, 893 F.2d at 1290.

To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." *Id*. However, "[c]onclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (quoting United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)). Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance of counsel." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted).

**Discussion**

  **Ground One: Ineffective Assistance of Counsel**

Most of Adams' ineffective assistance claims are related to sentencing, specifically to counsel's failure to persuade the Court that Adams shot into the air

10

away from Lents or to object to the government's evidence to the contrary. Adams does raise one claim unrelated to the sentencing, that is, that counsel's constitutionally ineffective assistance rendered her guilty plea unknowing and involuntary. The Court will address the latter issue first.

### *Knowing and Voluntary Guilty Plea*

Adams asserts that her plea was not knowing and voluntary because she relied on counsel's erroneous advice regarding the sentencing hearing. According to Adams, prior to her plea Moorer "remained consistent and adamant that the guidelines for attempted murder would not apply to her if the alleged victim did not show up to any court proceedings, specifically the sentencing hearing." (Petr's Br. 4, Doc. 40.) Constitutionally ineffective assistance of counsel may be grounds for relief in the guilty plea context if the petitioner can prove that counsel's performance was objectively unreasonable and that performance "affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted).

In this case, Adams' claim that she would not have pled guilty absent Moorer's erroneous advice simply is not credible in light of the record. She had no defense to the felon-in-possession charge. She gave a statement admitting that she possessed—and even discharged—a firearm. The only logical course for Adams-- and the one she pursued, albeit unsuccessfully—was to obtain the lowest possible guideline range by proving that she did not attempt to murder Lents.

### *Failure to Conduct an Adequate Investigation*

Adams claims that Moorer rendered constitutionally ineffective assistance because he failed to investigate the crime scene, failed to reenact the crime, and failed to interview Pickron, the other eyewitness. Even if counsel's performance could be considered deficient in any of these respects, the only prejudice alleged is that "[a] thorough investigation by counsel at the crime scene [along with Pickron's two conflicting statements] and with Pickron would have resulted in the development of true facts and or in the admission of false ones, on the material question involving Adams' sentence." (Petr.'s Br. 4, Doc. 40.) These allegations are insufficient to warrant an evidentiary hearing. A petitioner seeking § 2255 relief is entitled to an evidentiary hearing on the merits of his claim if he "alleges facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002) (internal quotations and citation omitted). However, claims based on generalized allegations without any supporting factual detail do not require an evidentiary hearing. *Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004). This claim is based on nothing more than a conclusory statement that the outcome would have been different if counsel's performed differently. Because Adams has failed to specific facts demonstrating prejudice, this claim is due to be denied.

### *Failure to Subpoena Pickron*

Adams asserts that counsel should have "subpoenaed eye witness Pickron after an appropriate investigation in order to expose the discrepancies in the prosecution's claim that Adams attempted to murder Lents." (Petr.'s Br. 6.) Counsel's failure to subpoena a witness who had given two conflicting accounts of

the incident was neither objectively unreasonable nor prejudicial. Pickron's contradictory statements would have made any testimony she gave inherently unreliable.

### *Failure to Inform Adams of her Right to Testify*

Adams claims that Moorer failed to inform her that she had a constitutional right to testify at sentencing. The right to testify in one's own behalf is a fundamental constitutional right. *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). A defense attorney who fails to advise his client of that right has performed deficiently. Deficient performance is, however, only half the claim. *See Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992) (applying both *Strickland* prongs to claim that counsel coerced defendant into waiving his right to testify). Adams cannot prove the second prong of the claim—prejudice, i.e., a reasonable probability that the outcome would have been different. There is no reasonable probability that the Court would have credited Adams' self-serving testimony. In fact, Adams version of events was presented in her statement, which was before the Court at sentencing. Adams' testimony affirming that statement would not have produced a different result. *See Aron*, 291 F.3d at 71 (no hearing required where "allegations are affirmatively contradicted by the record, or the claims are patently frivolous").

### *Failure to Prepare and Present Exhibits*

Adams argues that counsel should have introduced Pickron's statements at the sentencing hearing because those statements "would have made clear the discrepancies in the prosecutor's allegations that Adams attempted to murder

13

Lents." (Petr.'s Br. 7.). Adams argues that discrepancies in the two statements would have supported her version of events. Counsel's failure to introduce these statements was neither unreasonable nor prejudicial. Because Pickron gave two contradictory statements, the probative value of each is practically nil.

### *Failure to Object to the Video Recording*

Adams argues that counsel was ineffective because he failed to object to the introduction of Lents' videotaped statement. Adams argues that, contrary to the prosecutor's claim, Lents did not state on the video that Adams fired shots at her as she ran into the woods. Adams points to the following portion of the sentencing transcript, taken out of context:

BY MS. O'BRIEN

Q. Investigator Baggett, I believe we may have been talking over it while [the video] was going on. . . .

(Sent. Tr. 9.)[7] The remainder of the prosecutor's question, and the witness's response, demonstrate that this exchange had nothing to do with shots being fired at Lents:

Q. . . . But did Ms. Lentz [sic] make a statement on that recording as to what the Defendant said to her was the purpose of bringing her to that location?

A. Yeah, she did state that she told her to put a bullet in her head, yes.

(*Id.* 10.)

The Court's discussions with counsel during argument at sentencing also contradicts Adams' claim that this critical information was not on the video.

---

[7] Immediately preceding that statement is the notation "VIDEO PLAYED." (Sent. Tr. 9.)

THE COURT:

> Well, let me ask you this: How extreme is it when we have the video of the woman *and* the testimony of the officer saying she was shot at by the Defendant. . . .

(*Id.* 28 (emphasis added).)

Clearly, the factual basis of Adams' claim is contradicted by the record, which states, in the Court's own words, that Lents was on video "saying she was shot at by the Defendant." This claim is, therefore, due to be denied without an evidentiary hearing. *See Aron*, 291 F.3d at 71 (claims affirmatively contradicted by record may be summarily dismissed).

### *Failure to Object to Investigator's Testimony*

Adams contends that counsel was constitutionally ineffective because he failed to object to Investigator Baggett's testimony that "he learned that Adams only fired in the air by the defendant only." (Petr.'s Br. 27.) Adams argues that such testimony was false (and therefore objectionable) because Baggett also was aware of Pickron's letter stating the Adams fired into the air, But Baggett's testimony was not as Adams' claims. Adams relies on page 16, lines 1-4 of the sentencing transcript, which states as follows:

> Q. You have subsequently learned that, though, haven't you?
>
> A. I believe from Ms. Adams, from the Defendant stated that to me.

(Sent. Tr. 16.) The information Baggett "subsequently learned" from Adams was Adams' claim that she had told Lents she was going to spare her life and "just [did]

15

not want her coming back to Mobile anymore." *Id.* 15-16. Like the preceding claim, this claim is due to be denied because it is contradicted by the record.

  **Ground Two: Abuse of Discretion**

Adams argues that the Court committed error and abused its discretion when it relied on Lents' videotaped statement and on Baggett's testimony. This claim is due to be denied for two reasons. First, "[c]ollateral review is not a substitute for direct appeal;" therefore, "non-constitutional error. . . does not generally support a collateral attack on a final judgment." *Lynn v. United States.* 365 F.3d 1225, 1234 (11th Cir. 2004). Because this is not a claim of constitutional error, it could not provide grounds for relief under § 2255 even if it had merit. *Id.* In any event, it does not have merit because it is based on the same erroneous interpretations or misrepresentations of the record discussed, *supra* at 13-14.

**Conclusion**

For the reasons set forth above, Petitioner's motion to vacate, set aside, or correct sentence us **DENIED**.

**Certificate of Appealability Denied**

Rule 11 of the Federal Rules Governing Section 2255 Proceedings requires that the district court issue or deny a certificate of appealability when entering a final order on a § 2255 motion.. "A certificate of appealability may be issued only where the applicant has made a 'substantial showing of the denial of a constitutional right.'" *Hardwick v. Singlet*ary, 126 F.3d 1312, 1313 (11th Cir. 1997). This standard is "materially identical" to the standard governing certificates of probable cause under the former 28 U.S.C. § 2253. *Id.*; *accord Slack v. McDaniel*, 579 U.S. 473 (2000).

In the context of certificates of probable cause, the Supreme Court has defined the requirement of "a substantial showing of the denial of a federal right" to mean that the applicant must raise an issue that is debatable among jurists of reason. *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983). None of the claims raised in Petitioner's § 2255 meet this threshold. Therefore, the Certificate of Appealability is **DENIED**.

**DONE** and **ORDERED** this the 16th day of June, 2014.

*s/Charles R. Butler*
**Senior United States District Judge**